PEOPLE ex rel. GORMAN v. BELL et al., Police Com'rs.

(Supreme Court, Appellate Division, Second Department. March 11, 1908.)

MUNICIPAL CORPORATIONS—POLICE DEPARTMENT—DISMISSAL OF OFFICER—EVIDENCE.

Evidence examined, and *held* to sustain a charge of intoxication brought against a police officer, resulting in his dismissal from the force.

Woodward and Rich, JJ., dissenting.

Certiorari by the people, on the relation of Patrick Gorman, to review an order of J. Harvey Bell and others, police commission-

ers of the city of Yonkers, dismissing relator from the police force. Determination confirmed.

Argued before WOODWARD, HOOKER, GAYNOR, RICH, and MILLER, JJ.

William A. Walsh, for relator.
Thomas F. Curran, for respondents.

GAYNOR, J. The relator was dismissed for being intoxicated, and the sole question presented is whether there is any evidence to support the finding that he was intoxicated. Police officials are to be upheld in the discipline of their force unless they act without evidence. We have no right to interfere with their action except for legal cause.

The relator was on patrol from 12 midnight to 6 a. m. on November 13th. When he came into the station house at 6 o'clock he told the sergeant at the desk he was sick—had pains. He was allowed to go home. The sergeant says he did not make any examination of him to see what was the matter; to see whether he had been drinking or not; that he turned him over to the doctor. The doctor went to the relator's house about an hour later, at 7:13 a. m., to examine him. He found him lying across his bed with all of his clothes on in a drunken stupor. Being roused with great difficulty he denied he had been drinking. The doctor came back and examined him again at 11 a. m. He was then partly recovered, but unfit to walk downstairs. Being asked if he had any pain he said no. The relator was in the habit of using alcoholic liquor to excess, and the doctor had previously warned him, and warned him again on this visit, that he would have to stop or he would injure his health. The relator said he would report for duty that night. The doctor never found any cause for his condition except too much alcohol.

At noon the same day the captain also saw the relator at his house. He told the captain he had a pain in his left side. The captain says his appearance was that he had been drinking, and his breath smelled of liquor. He said he had not been drinking "at all." His wife said she gave him "a drink" of liquor and ginger to relieve him. "His general conduct" (says the captain) "is good except that he does persist in drinking rum. I have cautioned him on one or two occasions about that." The roundsman who was with the captain heard him say he was having great pain in his side. He did not smell anything on his breath. Another patrolman passed the relator at 5:30 that morning. He says the relator told him he had a pain in his side, but he did not stop or pay any attention to his condition. "I didn't take any particular notice at all." He evidently knew the case, and was not impressed by an old story. He had seen him at 4 o'clock also.

The relator testified that at about 5:20 a. m. "I got a pain in my left side; it was getting worse and worse all the while." He went home from the station house; "had an awful pain in my left side"; "it was a very bad pain, kind of a cutting pain." He lay on

the bed; "a few minutes afterwards my wife gave me some whiskey and Jamaica ginger, and I drank that to ease the pain." She gave him only one drink. He says that was all the drink he had that day and night. He contradicts the doctor—says he did tell him when he called the second time at his house that he had a pain in his left side. He did not tell him at the first call; "I was in a stupor; between sleep and awake, at that time." "It must have been the whiskey my wife gave me, I don't know anything else"— that put him in the stupor. He admitted that the statement of the captain and of the surgeon of their caution that he must give up drinking was true.

And now we are asked to say that there was no evidence to sustain the charge of intoxication against the relator. We are asked to believe that one drink of whiskey and ginger—such as a good wife gives her husband for pain in the belly—put this habitual drinker in the drunken stupor in which the doctor found him. We are asked to take his bare word against strong evidence. We are asked to take his bare word that he was ill, and only took a common potion of whiskey and ginger to ease his pain, against the experience and practiced eye of the doctor to the contrary. No sickness or disease was found in him then, or eleven days later when the doctor made a complete physical examination of him. The commissioners knew their man, tried him with great care, and properly got rid of him and made room for some trustworthy man. In view of the fact that he habitually drank alchoholic liquor to excess, and had theretofore been found guilty of drunkenness by the commissioners and fined therefor, the punishment of dismissal was not excessive or undue, if we had any power of review in that respect.

The order of the commissioners should be confirmed.

Determination confirmed, with costs. All concur, except WOODWARD and RICH, JJ., who dissent.